Index Number: 10-cv-06353 (ALC)(JCF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NOEL JACKSON GUZMAN,

                                        Plaintiff,

                    -against-

POLICE OFFICER BRIAN JAY,

                                        Defendants.

## DEFENDANT'S MOTION *IN LIMINE*

### *MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendant Jay*
*100 Church Street*
*New York, New York  10007*

*Of Counsel*
*Morgan D. Kunz & Matthew J. Modafferi*
Tel:  (212) 356-2357 / 2331

# TABLE OF CONTENTS

**Page**

POINT I ............................................................................................................. 2

   THE COURT SHOULD BIFURCATE THE LIABILITY AND DAMAGES PHASES OF
THIS TRIAL IN THE INTERESTS OF JUSTICE AND EFFICIENCY ............................. 2

POINT II ............................................................................................................ 8

   PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF THE
DISPOSITION OF HIS CRIMINAL CHARGES ................................................. 8

POINT III ........................................................................................................... 9

   PLAINTIFF SHOULD BE PRECLUDED FROM REFERRING TO THE "CITY OF NEW
YORK," DEFENSE COUNSEL AS "CITY ATTORNEYS' AND INDEMNIFICATION
BY THE CITY OF NEW YORK ...................................................................... 9

POINT IV ......................................................................................................... 11

   PLAINTIFF SHOULD BE PRECLUDED FROM ELICITING EVIDENCE OF
DISCIPLINARY HISTORIES AND PERSONNEL FILES ................................... 11

      A.   DISCIPLINARY HISTORY OF DEFENDANT BRIAN JAY ............................... 11

      B.   PRECLUDING THE WITNESS, VIDEO AND ANY MENTION OF THE
DOMINICAN DAY INCIDENT .............................................................. 14

      C.   DISCIPLINARY HISTORY OF NON-PARTY OFFICER WITNESSES ............. 16

      D.   PERSONNEL FILES ............................................................................ 16

POINT V ........................................................................................................... 17

   DEFENDANT SHOULD BE PERMITTED TO EXAMINE PLAINTIFF ON HIS
ARREST AND INCARCERATION HISTORY FOR DAMAGES PURPOSES ............... 17

POINT VI ......................................................................................................... 19

   PLAINTIFF SHOULD BE PRECLUDED FROM CALLING ADMINISTRATIVE LAW
JUDGE WALLACE TANNENBAUM AND HIS DECISION SHOULD BE PRECLUDED
............................................................................................................... 19

**Page**

POINT VII ............................................................................................................................. 21

   PLAINTIFF SHOULD BE PRECLUDED FROM CALLING DR. DASSA, DR. ZHOU,
   AND DR. TORO .............................................................................................................. 21

POINT VIII............................................................................................................................ 23

   WITNESS ALBERTO MOLINA SHOULD BE PERMITTED TO TESTIFY BY
   DEPOSITION DESIGNATION SINCE HE IS UNAVAILABLE FOR TRIAL DUE TO
   INFIRMITY ...................................................................................................................... 23

POINT IX................................................................................................................................ 24

   PLAINTIFF SHOULD BE PRECLUDED FROM SUGGESTING A SPECIFIC DOLLAR
   AMOUNT TO THE JURY ............................................................................................... 24

CONCLUSION....................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Pages**

Abu Dhabi Commer. Bank v. Morgan Stanley & Co., No. 08 Civ. 7508 (SAS), 2013
  U.S. Dist. LEXIS 35806 (S.D.N.Y. Feb. 25, 2013) ................................................... 4

Amato v. City of Saratoga Springs, 170 F.3d 311, 316 (2d Cir. 1999) ......................................... 3

Banushi v. P.O. Palmer, No. 08 Civ. 2937 (KAM), 2011 U.S. Dist. LEXIS 419, at *7-9
  (E.D.N.Y. Jan. 4, 2011) ...................................................................................... 16, 17, 18

Berkovich v. Hicks, 922 F.2d 1018, 1022 (2d Cir. 1991)....................................................... 13, 14

Buscemi v. Pepsico, Inc., 763 F. Supp. 1267, 1272 (S.D.N.Y. 1990) ........................................... 6

Busch v. City of New York, No. 00 CV 5211 (SJ), 2002 U.S. Dist. LEXIS 18337, *7
  (E.D.N.Y. Sep. 24, 2002)..................................................................................... 4

Cameron v. City of New York, 598 F.3d 50, 61 (2d Cir. 2010)................................................... 20

Consorti v. Armstrong World Industries, Inc., 72 F.3d 1003 (2d Cir. 1995) ......................... 24, 25

Devenpeck v. Alford, 543 U.S. 146, 152-53 (2004)...................................................... 13

Earl Manigault v. City of New York, 11 CV 4307(LAK) (S.D.N.Y. July 11, 2012)............ 15, 16

Edwards v. City of New York, 08-2199 (TLM), 2011 U.S. Dist. LEXIS 75300 at *14
  (E.D.N.Y. July 13, 2011) ..................................................................................... 16

Edwards v. City of New York, No. 08-2199 (TLM), 2011 U.S. Dist. LEXIS 75300, at
  *14-15 (E.D.N.Y. July 13, 2011)........................................................................... 10

Espada v. Schneider, 522 F. Supp. 2d 544, 552 (S.D.N.Y. 2007)................................................ 13

Estate of Kreiner v. Bridgestone/Firestone, Inc., 2000 U.S. Dist. LEXIS 9190 at *4-5
  (S.D.N.Y. July 5, 2000) ...................................................................................... 6

Figueroa v. Boston Sci. Corp., 00 Civ. 7922 (DC), 2003 U.S. Dist. LEXIS 10936, at *11
  (S.D.N.Y. June 25, 2003)..................................................................................... 14

Getty Petroleum Corp. v. Island Transp. Corp., 862 F.2d 10, 15 (2d Cir. 1988) ........................... 3

Graham v. Connor, 490 U.S. 386, 397 (1989)................................................................ 12

Hernandez v. Kelly, 09 CV 1576 (TLM)(LB), 2011 U.S. Dist. LEXIS 57114, at *17-18
  (E.D.N.Y. May 27, 2011) ..................................................................................... 9

Illinois v. Gates, 462 U.S. 213, 230-32 (1983)............................................................ 8

In re Lake George Tort Claims, No. 05-cv-1408 (TJM), 2010 U.S. Dist. LEXIS 45387,
   *12 (N.D.N.Y May 10, 2010) ........................................................................... 4

In re Master Key Antitrust Litig., 528 F.2d 5, 15 (2d Cir. 1975) .................................. 3

Jean-Laurent v. Hennessey, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) ................................... 8, 9

Katsaros v. Cody, 744 F.2d 270, 278 (2d Cir. 1984), cert. denied, 469 U.S. 1072 (1984) ........... 3

Mileski v. Long Island R.R. Co., 499 F.2d 1169, 1172 (2d Cir. 1974) ........................................ 24

Mineo v. City of New York, et al., 2013 U.S. Dist. LEXIS 46953 (E.D.N.Y. Mar. 29,
   2013) .............................................................................................................. 4

Morton v. Otis Elevator Co., No. 07-CV-00469 (JJM) 2012 U.S. Dist. LEXIS 4801
   (W.D.N.Y. Jan. 17, 2012) ............................................................................... 4

Newport v. Fact Concerts, 453 U.S. 247, 270-71 (1981) .............................................. 9

Nibbs v. Goulart, 822 F. Supp. 2d 339, 349 (S.D.N.Y. 2011) ....................................... 16

Phillips v. City of New York, 06-CV-3243 (RER), 2009 U.S. Dist. LEXIS 100716
   (E.D.N.Y. Oct. 28, 2009) .............................................................................. 4, 5

Picciano v. McLoughlin, No. 07 Civ. 0781 (GTS), 2010 U.S. Dist. LEXIS 114704, at *7
   (N.D.N.Y. Oct. 28, 2010) ............................................................................... 18

Provost v. Newburgh, 262 F.3d 146, 164 (2d Cir. 2001) .............................................. 10

Puglisi v. Town of Hempstead Sanitary District No. 2, No. 11-CV-0445 (PKC), 2013
   U.S. Dist. LEXIS 111972, *11, *13-16 (E.D.N.Y. Aug. 8, 2013) .......................... 22

Raposo v. Honda Motor Co., 1996 U.S. Dist. LEXIS 1116, at *11 (N.D.N.Y. Jan. 29,
   1996) .............................................................................................................. 7, 8

Ricciuti v. N.Y. City Trans. Auth., 124 F.3d 123, 128 (2d Cir. 1997) ............................. 8

Richmond v. General Nutrition Ctrs., Inc., 08 Civ. 3577 (PAE)(HBP), 2012 U.S. Dist.
   LEXIS 32070, at *31 (S.D.N.Y. Mar. 9, 2012) ................................................. 14

Shaw v. City of New York, No. 95 Civ. 9325 (AJP), 1997 U.S. Dist. LEXIS 4901, at
   *16-19 (S.D.N.Y. Apr. 15, 1997) .................................................................... 12

Thomas v. City of New York, 09 Civ. 3162 (ALC), Motion In Limine Rulings, Final
   Pre-Trial Conf., pgs. 50-51 (S.D.N.Y. June 21, 2012) (Carter, J.) ..................... 18

United States v. Irvin, 787 F.2d 1506, 1516-17 (11th Cir. 1986) .................................. 20

Vichare v. AMBAC Inc., 106 F.3d 457, 466 (2d Cir. 1996) ......................................... 3

<u>Vogelfang v. Riverhead County Jail</u>, No. 04-CV-1727 (SJF) (AKT), 2012 U.S. Dist. LEXIS 58064 (E.D.N.Y. Apr. 19, 2012) ................................................................. 4

<u>Wallace v. Hano</u>, No. 90 Civ. 2064 (WK), 1992 U.S. Dist. LEXIS 13388, at *19-21 (S.D.N.Y. Sep. 3, 1992) .............................................................................................. 13

<u>Williams v. McCarthy</u>, 05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 79151, *24-25 (S.D.N.Y. Oct. 25, 2007) ............................................................................................. 10

<u>Huddleston v. United States</u>, 485 U.S. 681, 688 (1988) ............................................. 12

<u>Wilson v. City of New York</u>, No. 06 Civ. 229 (ARR), 2006 U.S. Dist. LEXIS 90050, at *1-2 (E.D.N.Y. Dec. 13, 2006) .................................................................................... 17

<u>Wright v. Kelly</u>, 95-CV-0688 (CEH), 1998 U.S. Dist. LEXIS 20424, at *15 (W.D.N.Y. Oct. 16, 1998) ............................................................................................................. 20

<u>Zofcin v. Dean</u>, 144 F.R.D. 203, 205 (S.D.N.Y. 1992) ................................................ 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- x

NOEL JACKSON GUZMAN,                                    **DEFENDANT'S MOTION *IN LIMINE***

                                Plaintiff,

                                                        10-cv-06353 (ALC)(JCF)

                    -against-

POLICE OFFICER BRIAN JAY,

                                Defendants.

----------------------------------------------------------------------- x

## PRELIMINARY STATEMENT

        Plaintiff brings this action pursuant to 42 U.S.C. § 1983 against defendant Brian Jay.[1]  Specifically, plaintiff alleges that he was falsely arrested and subjected to excessive force in the early morning hours on February 14, 2009.  Defendant Jay contends the arrest and force used were reasonable under the circumstances.

        In accordance with the applicable Federal Rules of Civil Procedure, the Federal Rules of Evidence, and this Court's Individual Rules of Practice, defendant respectfully submits this memorandum of law seeking the following relief *in limine*: (1) the Court should bifurcate the liability and damages phases of this trial in the interests of efficiency and to prevent undue prejudice; (2) plaintiff should be precluded from introducing evidence of the disposition of his criminal charges; (3) plaintiff should be precluded from referring to the "City of New York," defense counsel as "City Attorneys," and indemnification by the City of New York; (4) plaintiff

---

[1] By stipulation and order, endorsed and filed on January 3, 2013, the parties agreed to the dismissal, with prejudice, of the City of New York and Police Officer Jonny Diaz from this case and to amend the caption of the complaint to reflect that only Officer Jay remains as a defendant. (Docket Entry No. 45).

should be precluded from eliciting evidence of disciplinary histories and personnel files; (5) defendant should be permitted to examine plaintiff on his arrest and incarceration history for damages purposes; (6) plaintiff should be precluded from calling Administrative Law Judge Wallace Tannenbaum and his decision should be precluded; (7) plaintiff should be precluded from calling Dr. Dassa, Dr. Zhou, and Dr. Toro; (8) witness Alberto Molina Should be permitted to testify by deposition designation since he is unavailable for trial due to infirmity; and (9) plaintiff should be precluded from asking for a specific dollar amount.

## ARGUMENT

### POINT I

### THE COURT SHOULD BIFURCATE THE LIABILITY AND DAMAGES PHASES OF THIS TRIAL IN THE INTERESTS OF JUSTICE AND EFFICIENCY

Pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, Defendant requests that the trial of this action be bifurcated into two phases – first, for determination of the liability issues and then, if necessary, for determination of plaintiff's damages.  An order bifurcating trial into liability and damages phases may dramatically decrease the length of the trial, will avoid strong prejudice to defendant, and will promote judicial efficiency.  On the Joint Pretrial Order, Plaintiff lists six witnesses who will testify as to damages only.[2]  In addition, Defendant will call at least one witness on the issue of damages.  Given that there are nine

---

[2] They are: (1) Randall Ehrlich, M.D.; (2) Dr. Jose Carbajal; (3) Dr. Gabriel L. Dassa; (4) Dr. Guoping Zhou; (5) Dr. Jose Toro; and (6) Administrative Law Judge Tennanbaum.  Defendant anticipates that Plaintiff will argue the testimony of these witnesses will also go to causation.  As is addressed in more detail below, however, this is not the case.  Moreover, defendant notes that he is moving *in limine* to preclude the Administrative Law Judge that Plaintiff seeks to call (Point VI, supra), since, pursuant to Fed. R. Evid. 402 and 403, since he has no relevant testimony to offer, and to the extent that he does, it is far outweighed by the risk of unfair prejudice and confusing the issues and has the potential to usurp the role of the jury.

witnesses listed on the JPTO who will testify as to liability[3], bifurcation has the potential to cut the trial nearly in half.  Bifurcation of the liability and damages phases also will eliminate the danger of a verdict for plaintiff based on sympathy in light of the nature of his alleged injuries.

Rule 42(b) allows the Court to bifurcate a trial where doing so would promote convenience, avoid prejudice to defendants, or promote economy.  Fed. R. Civ. P. 42(b).  The decision to bifurcate "is a matter within the sound discretion of the trial court." Getty Petroleum Corp. v. Island Transp. Corp., 862 F.2d 10, 15 (2d Cir. 1988); see also, Katsaros v. Cody, 744 F.2d 270, 278 (2d Cir. 1984), cert. denied, 469 U.S. 1072 (1984) (approving bifurcation of trial into liability and damages phases where the two phases involved different types of evidence); Zofcin v. Dean, 144 F.R.D. 203, 205 (S.D.N.Y. 1992); In re Master Key Antitrust Litig., 528 F.2d 5, 15 (2d Cir. 1975) (noting that bifurcated trials have frequently been employed with great success and that a single jury can hear both the liability and damages phases).  "Therefore, bifurcation may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue … or where one party will be prejudiced by evidence presented against another party … ."  Amato v. City of Saratoga Springs, 170 F.3d 311, 316 (2d Cir. 1999) (approving bifurcation in false arrest and excessive force case) (citing Vichare v. AMBAC Inc., 106 F.3d 457, 466 (2d Cir. 1996) and Fed. R. Civ. P. 42(b)).

---

[3] The nine witnesses who will testify as to liability are: (1) Plaintiff; (2) defendant Brian Jay; (3) former defendant Jonny Diaz; (4) witness police officer Michael McHugh, (5) witness police officer John Walters; (6) witness Alberto Molina; (7) witness Jocelin Roman; (8) witness EMT Smith; and (9) witness Michelle Hernandez.  Defendant notes that he is moving *in limine* to preclude Michelle Hernandez, who witnessed an unrelated incident involving Officer Jay and whom Plaintiff seeks to call under Rule 404 (Point IV, supra), since her testimony is not relevant and to the extent there is any probative value to her testimony it is substantially outweighed by the danger of unfair prejudice, confusion, and undue delay.

The factors in Rule 42 – convenience, prejudice, and economy – "do not represent a rigid test for determining whether separate trials are necessary; to the contrary the court could order bifurcation upon a showing of merely one of these factors." Busch v. City of New York, No. 00 CV 5211 (SJ), 2002 U.S. Dist. LEXIS 18337, *7 (E.D.N.Y. Sep. 24, 2002)(internal citation omitted). Courts in this district have bifurcated damages and liability in a number of different contexts. See, e.g., Mineo v. City of New York, et al., 2013 U.S. Dist. LEXIS 46953 (E.D.N.Y. Mar. 29, 2013) (in police excessive force case, bifurcating liability and damages because of the prejudicial impact of the defendant and to save resources); Abu Dhabi Commer. Bank v. Morgan Stanley & Co., No. 08 Civ. 7508 (SAS), 2013 U.S. Dist. LEXIS 35806 (S.D.N.Y. Feb. 25, 2013) (bifurcating liability and damages in bank fraud case to avoid prejudice to Plaintiff, to promote efficiency "by avoiding the need to adjudicate" issues that may be irrelevant, and easing the burden on the jury by simplifying and shortening the trial.); Vogelfang v. Riverhead County Jail, No. 04-CV-1727 (SJF) (AKT), 2012 U.S. Dist. LEXIS 58064 (E.D.N.Y. Apr. 19, 2012) (bifurcating damages and liability in excessive force case and precluding the Plaintiff from offering testimony as to the "seriousness or permanency of those injuries on the basis that such matters are relevant only to the issue of damages, not liability."); Morton v. Otis Elevator Co., No. 07-CV-00469 (JJM) 2012 U.S. Dist. LEXIS 4801 (W.D.N.Y. Jan. 17, 2012) (ordering bifurcation of damages and liability in tort case where the only overlap in testimony between the two phases would be testimony from the Plaintiff); In re Lake George Tort Claims, No. 05-cv-1408 (TJM), 2010 U.S. Dist. LEXIS 45387, *12 (N.D.N.Y May 10, 2010) (granting bifurcation of damages and liability to avoid prejudice to defendant by a juror granting an award based on sympathy, and noting that "[t]here is little doubt that the separation of liability from damages in personal injury cases may save time."); Phillips v. City of New

York, 06-CV-3243 (RER), 2009 U.S. Dist. LEXIS 100716 (E.D.N.Y. Oct. 28, 2009) (granting bifurcation of damages and liability in excessive force case, but permitting physicians and EMTs to testify as to injury insomuch as that testimony relates to liability.).

In this case, the Court should grant bifurcation for convenience and to promote economy.  Here, the liability question turns on whether Officer Jay kicked Plaintiff in the leg as Plaintiff claims or not.  This is a straight forward question that a jury can decide based on the testimony of Plaintiff, the two witnesses, the EMT, and the police officers.  Plaintiff claims that he suffered a severe injury as a result of the alleged kicking which has lead to surgery, physical therapy, and permanent injury.  To make out his damages, Plaintiff plans to call a retained expert, the emergency room doctor, a treating orthopedist, the orthopedic surgeon who conducted the surgery, and a doctor who administered a electromyography (EMG).  Thus, bifurcation of damages and liability could shorten the trial by half, if not more, since the testimony of doctors often takes longer that the testimony of fact witnesses.[4]  Moreover, as the alleged injuries relate to nerve damage and includes a complicated question of whether Plaintiff mitigated his damages, the damages question is much more complicated than the liability question.  Therefore, bifurcation will reduce juror confusion.

In addition, bifurcation will promote convenience as it will save very busy doctors from loosing a day treating patients to come testify as to an issue that the jury will never reach if they find no liability.  Finally, anticipating an argument from Plaintiff that the testimony of the experts will go to the question of causation, Defendant points out this is a red hearing.  It is very

---

[4] This is especially true in regard to Officer Walters and Sergeant McHugh, who did not witness the use of force and will only provide brief testimony as to the scene just prior to the force.  In addition, EMT Smith will only authentic a record he created and discuss how Plaintiff admitted to him that he was injured in a fight, not by the police.  Thus, his testimony will be very brief.

possible that Plaintiff was kicked in the leg on the night in question by someone other than defendant Jay, as there is evidence that Plaintiff was involved in a fight with a civilian prior to the police arriving on the scene.  Defendant Jay maintains that he did not kick Plaintiff and that the force he did use was reasonable given Plaintiff's actions.  Thus, whether the type of injury that Plaintiff suffered is consistent with being kicked in the leg or not is irrelevant since the question is whether Officer Jay kicked him, not whether he was kicked at all.

        The factor of prejudice to Defendant also weighs in favor of bifurcation.  The facts of this case suggest that Plaintiff was indeed injured on the night of February 14, 2009. Plaintiff claims that a police officer kicked him, causing the injury, but there is testimony in the case that Plaintiff was in a fight with non-parties before the police ever arrived and it was during this fight that the was injured.  If the jury hears extensive testimony from five doctors as to Plaintiff's physical condition following the events of that night, they may feel sympathy for him and award damages based on that sympathy rather than through a carefully analysis of the liability question.  Plaintiff claims he was unable to get medical treatment for a period of time, that once he did receive treatment he needed surgery, and that he has a permanent foot-drop which causes him to limp.  All of this information will inflame the jury and may lead them to award Plaintiff damages out of sympathy.  This weights strongly in favor of bifurcation.  See, e.g., Buscemi v. Pepsico, Inc., 763 F. Supp. 1267, 1272 (S.D.N.Y. 1990) (bifurcating liability and damages issued so as to separate emotional distress evidence relevant only to some but not all claims; recognizing that evidence of harm to a plaintiff regardless of the cause might result in sympathetic jurors more concerned with compensating plaintiff for his injury than whether or not the defendant is at fault); Estate of Kreiner v. Bridgestone/Firestone, Inc., 2000 U.S. Dist. LEXIS 9190 at *4-5 (S.D.N.Y. July 5, 2000) (recognizing that potential for prejudice justifies

bifurcation where there is a potential or risk that a jury's liability determination will be influenced by evidence of plaintiff's severe injuries, lengthy medical treatment, and the physical and economic impact; ordering bifurcation of trial to avoid undue prejudice; noting that jury unlikely to follow instruction by court to disregard considerations of sympathy); Raposo v. Honda Motor Co., 1996 U.S. Dist. LEXIS 1116, at *11 (N.D.N.Y. Jan. 29, 1996) (in tort car accident case, ordering bifurcation of liability and damages phases, noting that the issue of liability was separate from the question of damages, and stressing the prejudice to defendants given the Plaintiffs physical condition).

For example, in Raposo, an action brought to recover for severe personal injuries sustained by one of the plaintiffs in a vehicle accident, defendant sought bifurcation and proposed that evidence on the liability issue first be presented to the jury.  Defendant proposed that, if the jury found for the plaintiff on liability, then the same jury would hear evidence concerning the extent of the injuries and determine appropriate damages.  Plaintiffs opposed the motion to bifurcate, arguing that the issues of liability and damages were not distinct and separate, and that defendant had failed to show how it would be prejudiced from a single trial or how bifurcation of trial would enhance judicial economy.  After considering the Rule 42(b) standard and case law applying the rule, the court held that the action should be bifurcated into liability and damages phases.  Raposo, 1996 U.S. Dist. LEXIS 1116 at *10-11.  Specifically, the court concluded that the extent of plaintiff's injuries and medical treatment, lost wages and future earnings, and pain and suffering had no bearing on liability; the testimony of experts, should be deferred pending determination of liability; and that plaintiffs would be permitted to introduce medical testimony during the liability phase of the case only to the extent that it was relevant to liability issues such as accident reconstruction.  Raposo, 1996 U.S. Dist. LEXIS 1116

at *4-6.  The court recognized both the substantial impact that damages evidence was likely to have on a jury's sympathy, and that the trial need not be unreasonably lengthened by conducting it in liability and damages phases.  Raposo, 1996 U.S. Dist. LEXIS 1116 at *7-10.

Accordingly, in this case, bifurcation of the liability and damages questions is appropriate to promote economy and prevent undue prejudice.

## POINT II

## PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF THE DISPOSITION OF HIS CRIMINAL CHARGES

Plaintiff should be precluded from introducing evidence of the disposition of his criminal charges pursuant to Rules 401 and 402.  Plaintiff's claims are for false arrest and excessive force.  The disposition of plaintiff's underlying criminal charges are not relevant to either claim.  See Jean-Laurent v. Hennessey, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) ("the court's determination of what constitutes 'relevant evidence' is guided by the nature of the claims and defenses in the cause of action.").  The disposition is irrelevant because probable cause is evaluated based on the totality of the circumstances based on the facts available to the officer at the time of the arrest.  Illinois v. Gates, 462 U.S. 213, 230-32 (1983); Ricciuti v. N.Y. City Trans. Auth., 124 F.3d 123, 128 (2d Cir. 1997) (citations omitted).  Indeed, the jury will no doubt be instructed in the Court's jury charge that the outcome of the criminal charges is not be considered.  Therefore, evidence of the disposition of the criminal charges does not have any relevance in the probable cause analysis for plaintiff's arrest.

Moreover, assuming that evidence pertaining to the disposition of plaintiff's criminal charges are relevant, Rule 403 allows the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

presenting cumulative evidence." Fed. R. Evid. 403. Here, introduction of evidence pertaining to the fact that the underlying criminal charges against plaintiff were dismissed is unfairly prejudicial to the defendant because it may lead a jury to assume that the arrest of plaintiff was somehow faulty. Accordingly, plaintiff should be precluding from mentioning the disposition of his criminal charges.[5]

### POINT III

### PLAINTIFF SHOULD BE PRECLUDED FROM REFERRING TO THE "CITY OF NEW YORK," DEFENSE COUNSEL AS "CITY ATTORNEYS' AND INDEMNIFICATION BY THE CITY OF NEW YORK

Plaintiff should be precluded from mentioning the "City of New York," referring to defense counsel as "City attorneys" and indemnification on the grounds that such references would unfairly prejudice the defendant. Any mention of the City of New York, which is no longer a defendant in this case, may lead the jury to believe that defendant Jay may be indemnified by the City of New York, which is commonly viewed as a "deep pocket" for the purposes of any potential judgment. See Jean-Laurent v. Hennessy, 840 F. Supp. 2d 529, 550 (E.D.N.Y. 2011) (precluding evidence that defense counsel are City attorneys and that the City may indemnify defendants on the grounds that it would unfairly prejudice the defendants); Hernandez v. Kelly, 09 CV 1576 (TLM)(LB), 2011 U.S. Dist. LEXIS 57114, at *17-18 (E.D.N.Y. May 27, 2011) (same); cf. Newport v. Fact Concerts, 453 U.S. 247, 270-71 (1981) (among reasons for holding that municipalities are immune from punitive damage awards is the

---

[5] Plaintiff should also be precluded from mentioning other damages associated with his criminal case, including the number of court appearances made, the duration of the prosecution, etc., on the grounds that this information is irrelevant to the probable cause determination and any damages for a false arrest claim.

risk that "the unlimited taxing power of a municipality may have a prejudicial impact on the jury, in effect encouraging it to impose a sizable award.").

Indemnification is also irrelevant where the defendants do not proffer evidence of their own financial resources.  See Provost v. Newburgh, 262 F.3d 146, 164 (2d Cir. 2001) (holding that it was improper for the district court to instruct the jury to consider the individual defendant's ability to pay in determining punitive damages award where the defendant did not offer evidence of his financial resources at trial); see also Edwards v. City of New York, No. 08-2199 (TLM), 2011 U.S. Dist. LEXIS 75300, at *14-15 (E.D.N.Y. July 13, 2011) ("Indemnification is not relevant to any issue before the jury and plaintiff will not be permitted to inform the jury that defendant might be indemnified by the City.") (citation omitted); Williams v. McCarthy, 05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 79151, *24-25 (S.D.N.Y. Oct. 25, 2007) (precluding admission at trial of evidence of potential indemnification of defendant police officers by the City of New York on relevancy grounds).  Furthermore, any mention of indemnification is highly prejudicial since, if the jury is permitted to assume that the City of New York will pay, the jury may not carefully assess issues of liability.  This is precisely the concern that motivated the drafters of the Federal Rules of Evidence to include Rule 411, which prohibits the admission of evidence of a defendant's liability insurance.  See Fed. R. Evid. 411 Advisory Committee's Note ("More important, no doubt, has been the feeling that knowledge of the presence or absence of liability insurance would induce juries to decide cases on improper grounds.") (internal citation omitted).  Accordingly, any mention of the "City of New York" or "City attorneys" should be precluded because such reference would prejudice the defendant, and any mention of indemnification should be precluded because it is irrelevant and highly prejudicial to defendant.

## POINT IV

## PLAINTIFF SHOULD BE PRECLUDED FROM ELICITING EVIDENCE OF DISCIPLINARY HISTORIES AND PERSONNEL FILES

**A.      Disciplinary History of Defendant Brian Jay**

Plaintiff should be precluded from questioning or offering any evidence of defendant Jay's disciplinary history pursuant to Fed. R. Evid. 402, 403, 404(b), 608, and 611. As a preliminary matter, defendant Jay has only one substantiated Civilian Complaint Review Board ("CCRB") complaint. The large majority of the complaints against defendant Jay have been exonerated by the CCRB. The substantiated complaint was made by Michelle Hernandez to the CCRB stemming from an incident that occurred on August 8, 2010 at the Dominican Day Parade. Defendant Jay utilized his pepper spray to subdue an individual who threatened to assault a group of officers by throwing a bottle at them. Defendant Jay, in an attempt to spray the perpetrator, pepper-sprayed several bystanders, including the complainant Michelle Hernandez. In light of that CCRB complaint of excessive force, plaintiff intends on having a trial within a trial to impermissibly show that defendant Jay acted in similar fashion in this case. Any evidence of that incident, including calling Michelle Hernandez as a witness, introducing the disposition of the CCRB's investigation, showing the jury a video of that incident, etc.,[6] is irrelevant, prejudicial, confusing, a waste of time, would be used to show an alleged propensity of the defendant and has little probative value.

---

[6] Plaintiff lists Michelle Hernandez as a witness in the Joint Pre-Trial Order. Additionally, plaintiff lists the CCRB's findings from the August 8, 2010 incident, a video of the August 8, 2010 incident and a tape-recorded interview of defendant Jay concerning the August 8, 2010 incident as exhibits in the Joint Pre-Trial Order.

Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ." Fed. R. Evid. 404(b). The decision to admit evidence under Rule 404(b) also depends upon "whether the danger of unfair prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." Huddleston v. United States, 485 U.S. 681, 688 (1988). Thus, Rule 404(b) "requires a two-part analysis: first, whether the proposed evidence fits within one of the 'exceptions' provided by the Rule, and second, even if it does, whether under Rule 403, the evidence's probative value is substantially outweighed by the potential for jury confusion or prejudice." Shaw v. City of New York, No. 95 Civ. 9325 (AJP), 1997 U.S. Dist. LEXIS 4901, at *16-19 (S.D.N.Y. Apr. 15, 1997). See e.g., Advisory Committee Notes to Fed. R. Evid. 404(b); Wright & Graham, Federal Practice & Procedure: Evidence § 5240 at 472 ("even if the evidence falls within one of the traditional exceptions [in Rule 404(b)], the trial judge may still exclude it on the discretionary grounds listed in Rule 403").

In this case, any reference to the August 8, 2010 incident does not fall under any of the 404(b) exceptions. The subjective intent or motive of defendant Jay is irrelevant to plaintiff's claims for excessive force and false arrest and, therefore, any argument that the August 8, 2010 incident is relevant to prove motive or intent falls flat. See Graham v. Connor, 490 U.S. 386, 397 (1989) ("the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or

motivation.") (citations omitted); see also Espada v. Schneider, 522 F. Supp. 2d 544, 552 (S.D.N.Y. 2007) ("The probable cause inquiry focuses on the information available to the officer at the time of arrest; an officer's subjective intent is irrelevant) (citing Devenpeck v. Alford, 543 U.S. 146, 152-53 (2004)).

Moreover, to the extent plaintiff seeks to use evidence of the August 8, 2010 incident to establish a "pattern of conduct," the Second Circuit has uniformly held that evidence of an officer's past bad acts are only admissible under Rule 404(b) if the alleged past bad act has a close nexus with the acts complained of by plaintiff in his complaint. Berkovich v. Hicks, 922 F.2d 1018, 1022 (2d Cir. 1991). In Berkovich, the plaintiff sought to introduce a police officer's past CCRB complaints to prove a "pattern of conduct" on the part of the officer with respect to, among other things, plaintiff's false arrest and assault and battery claims. Id. In upholding the trial court's exclusion of the CCRB complaints, the Second Circuit held that "[t]o merit admission under this theory, the extrinsic acts must share 'unusual characteristics' with the act charged or represent a 'unique scheme.'" Id. at 1022-23 (citation omitted); see also Wallace v. Hano, No. 90 Civ. 2064 (WK), 1992 U.S. Dist. LEXIS 13388, at *19-21 (S.D.N.Y. Sep. 3, 1992) (prior bad acts claimed to be a "pattern of conduct" must be distinctive enough to form a signature). The record is devoid of any such "unique scheme." The only similarity between the August 8, 2010 incident and the present case is that defendant Jay utilized his pepper spray on both occasions. The use of pepper spray for a police officer is not distinctive enough to form a signature – officers are equipped with pepper spray to be used as a defense mechanism.

Accordingly, any attempt by plaintiff to introduce prior allegations or complaints against defendant Jay to prove intent, motive or pattern "amounts to no more than a veiled attempt to do what Rule 404(b) expressly prohibits – introducing evidence of bad acts to show

the defendant's propensity to commit such acts," Berkovich, 922 F.2d at 1022, and should therefore be precluded.

Assuming, *arguendo*, that the prior incident has some probative value with respect to one of the Rule 404(b) exceptions, the Rule 403 balancing test weights heavily in favor of excluding the evidence.  Introduction of prior complaints would "inflame the situation" and carry insurmountable prejudice for the defendant to overcome.  Berkovich, 922 F.2d at 1023. Once the jury hears that defendant Jay has a prior substantiated complaint for excessive force, the same claim here, the case is over.  No curative instruction could overcome the enormous prejudice that would result.  Accordingly, any mention of the August 8, 2010 incident, or any discipline for that matter, should be precluded under Rule 403.[7]

**B.      Precluding the Witness, Video and any Mention of the Dominican Day Incident**

Plaintiff should be precluded from mentioning anything about the incident on August 8, 2010 from the Dominican Day Parade during this trial on the grounds that it is irrelevant and extremely prejudicial.  Specifically, plaintiff should be precluded from calling Michelle Hernandez as a witness and playing any video recording of the Dominican Day incident.  As mentioned above, this is a veiled attempt to show impermissible propensity on the part of defendant Jay.  Any potential probative value that the Dominican Day incident would

---

[7] Courts in this Circuit have applied the same analysis to prior civil lawsuits, finding that the probative value of introducing prior lawsuits is outweighed by the prejudicial effect such evidence could have and its potential to confuse the jury.  See Richmond v. General Nutrition Ctrs., Inc., 08 Civ. 3577 (PAE)(HBP), 2012 U.S. Dist. LEXIS 32070, at *31 (S.D.N.Y. Mar. 9, 2012) (precluding the introduction of evidence of lawsuits against defendant because "the risk of unfair prejudice and confusion from introducing documents reflecting allegations in other cases clearly outweighs the probative value of such claims."); see also Figueroa v. Boston Sci. Corp., 00 Civ. 7922 (DC), 2003 U.S. Dist. LEXIS 10936, at *11 (S.D.N.Y. June 25, 2003) (finding that the probative value of introducing evidence of other lawsuits is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, and considerations of undue delay and waste of time.").

have is outweighed by the enormous prejudice that would result.  Moreover, to the extent the

Dominican Day incident was admissible, it would be an invitation to the plaintiff to try all of

defendant Jay's force cases in this one.  If plaintiff were to put on evidence that defendant Jay

was thought to have used excessive force in a prior incident, then defendant Jay should be able to

submit evidence and have witnesses testify as to all of the occasions where defendant Jay used

reasonable and appropriate force.

      The Honorable Lewis A. Kaplan's decision, in Earl Manigault v. City of New

York, 11 CV 4307(LAK) (S.D.N.Y. July 11, 2012) (relevant portions attached hereto as Exhibit

A), precluding a witness testifying regarding a prior allegation of misconduct, is particularly

instructive.  In that case, plaintiff alleged that the defendant officers falsely arrested him for drug

possession and illegally searched plaintiff and sought to call other witnesses who alleged were

falsely arrested for drug possession and illegally searched by the defendant officer because the

witnesses would be probative of motive, intent, pattern and mistake.  The Court disagreed with

plaintiff's 404(b) arguments stating that the plaintiff was "adopting every buzz phrase from

404(b) and trying to fit square pegs in a round roles."  See Exhibit A, pg. 162.  Judge Kaplan

ruled that none of the alleged 404(b) evidence was admissible

> regardless of any 403 consideration.  But even if they were close
> enough to be probative for a proper purpose under 404(b), I would
> exclude them anyway because the probative value is extremely
> small in my judgment and the risk of unfair prejudice and
> confusion and wasted time is enormous.  There is a risk that the
> evidence no matter what I instruct the jury on would in fact be
> used to show bad character and action and conformity in this case
> with what you claim to have happened before.  Secondly, it is an
> invitation to try at least as many other drug possession cases and
> the lawfulness of other searches as you have witnesses to other
> incidents as part of this case.

See Exhibit A, pgs. 158-59.  For the same reasons delineated by the Court in Manigault, plaintiff should be precluded from calling witness Michelle Hernandez, playing any video surveillance from the August 8, 2010 incident and mentioning anything at all about this non-related incident.

## C.   Disciplinary History of Non-Party Officer Witnesses

For the same reasons set forth above, plaintiff should also be precluded from proffering evidence or eliciting testimony regarding non-party officer witnesses' prior or subsequent disciplinary complaints or lawsuits. These individuals are not defendants in this matter, and thus not subject to liability herein, the probative value of any prior or subsequent disciplinary complaints or lawsuits is extremely low while the prejudicial effect of this evidence is high.  Moreover, any use of prior discipline to impeach a non-party witness "invites the jury to draw the conclusion that [the] defendant regularly [acts improperly]."   Nibbs v. Goulart, 822 F. Supp. 2d 339, 349 (S.D.N.Y. 2011).  The danger of confusion and prejudice clearly outweigh the probative value of any non-party's disciplinary record.  Id.  As such, this evidence should be also precluded pursuant to Fed. R. Evid. 403.

## D.   Personnel Files

Plaintiff should also be precluded from inquiring into the personnel files of defendant Jay or any non-party police officer witness.  As stated above, such information is irrelevant to plaintiff's false arrest and excessive force claims.  Such evidence could only serve to prejudice the defendant and confuse the jury.  Since the City of New York is no longer be a defendant in this action any personnel files and performance evaluations have no relevancy to the issues at hand and, therefore, any inquiry into the personnel files must be precluded.  See Edwards v. City of New York, 08-2199 (TLM), 2011 U.S. Dist. LEXIS 75300 at *14 (E.D.N.Y. July 13, 2011)(precluding police officers' personnel files and performance evaluations from trial on relevance grounds); Banushi v. Palmer, 08-CV-2937(KAM)(JO), 2011 U.S. Dist. LEXIS 419,

at *4-7 (E.D.N.Y. Jan. 4, 2011)(precluding personnel files and disciplinary histories). Accordingly, plaintiff should be precluded from inquiring into the personnel files pursuant to Fed. R. Evid. 401, 402, 403 and 404(b).

**POINT V**

**DEFENDANT SHOULD BE PERMITTED TO EXAMINE PLAINTIFF ON HIS ARREST AND INCARCERATION HISTORY FOR DAMAGES PURPOSES**

Defendants should be permitted to question plaintiff concerning his prior arrests and incarcerations under Rules 402 in order to refute and mitigate his claim for emotional damages. Here, plaintiff is claiming emotional damages stemming from an approximately 3 hour detention and alleged use of excessive force. However, in addition to his detention from the underlying incident, plaintiff has been arrested and detained by the police on at least one prior occasion and spent approximately 24 hours in police custody as a result.

Should the jury determine that damages are warranted in this case, the amount of time plaintiff spent in police custody during his prior arrests and incarceration bears directly on the issue of any damages stemming from his time in police custody on February 14, 2009. Accordingly, it is necessary for the jury to compare the approximately 3 hours plaintiff spent in police custody in this case to the prior 24 hour detention from his prior arrest in order to measure damages, if any, for plaintiff's claimed loss of liberty.

Courts in both the Southern and Eastern Districts of New York have also permitted inquiry into a plaintiff's arrest history for the purposes of emotional damages. A common rationale is that "one who has had a number of prior arrests and detentions is likely to have suffered less distress than one who has never been detained." Wilson v. City of New York, No. 06 Civ. 229 (ARR), 2006 U.S. Dist. LEXIS 90050, at *1-2 (E.D.N.Y. Dec. 13, 2006); see

also Thomas v. City of New York, 09 Civ. 3162 (ALC), Motion *In Limine* Rulings, Final Pre-Trial Conf., pgs. 50-51 (S.D.N.Y. June 21, 2012) (Carter, J.) (finding plaintiff's prior arrest and incarceration history relevant to a jury's determination of emotional damages under Rule 402); Banushi v. P.O. Palmer, No. 08 Civ. 2937 (KAM), 2011 U.S. Dist. LEXIS 419, at *7-9 (E.D.N.Y. Jan. 4, 2011) ("Because a plaintiff who has had a number of prior arrests and detentions is likely to have suffered less distress than one who has never before been detained, . . . defendants may inquire into plaintiffs past arrests and incarcerations during the damages phase of the trial.")(internal citations and quotation marks omitted) .  "Furthermore, the probative value of arrest history evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Banushi, 2011 U.S. Dist. LEXIS 419, at *7-9 (quotations omitted) (citing Picciano v. McLoughlin, No. 07 Civ. 0781 (GTS), 2010 U.S. Dist. LEXIS 114704, at *7 (N.D.N.Y. Oct. 28, 2010)).

In the present case, plaintiff is pursuing claims for emotional distress damages stemming from his February 14, 2009 arrest and detention.  Plaintiff alleges to have suffered "emotional distress, embarrassment and humiliation," and specifically with respect to his arrest he alleges "he was put in fear for his safety [and] was humiliated." (See Docket Entry No. 1, Plaintiff's Complaint at ¶¶ 30, 43).  Plaintiff's arrest history is therefore relevant, under Rule 402, to refute and mitigate his claimed damages.  In other words, the fact that plaintiff has previously been handcuffed and detained by the police for about a day is highly relevant to his claim of emotional distress damages.  Accordingly, plaintiff's detention and alleged damages must be placed in context for the jury through his prior arrest and incarceration, and therefore is relevant in the instant matter under Rule 402.

## POINT VI

### PLAINTIFF SHOULD BE PRECLUDED FROM CALLING ADMINISTRATIVE LAW JUDGE WALLACE TANNENBAUM AND HIS DECISION SHOULD BE PRECLUDED

Plaintiff should be precluded from calling Administrative Law Judge Wallace Tennenbaum, pursuant to Fed. R. Evid. 402, as this individual has no relevant testimony to add to this case. In addition, pursuant to Fed. R. Evid. 403, any evidence that this individual could offer would be prejudicial, lead to confusion, and be cumulative. Finally, this witnesses only knowledge of the case comes from inadmissible hearsay, and therefore should be excluded under Fed. R. Evid. 803.

ALJ Tennenbaum reviewed Plaintiff's application for Social Security Disability ("SSD") benefits, including medical documents, and presided over a hearing concerning Plaintiff's application for SSD benefits. Plaintiff testified at that hearing concerning the incident that forms the basis of this lawsuit. ALJ Tennenbaum determined that under specific sections of the Social Security Act, the Plaintiff meet the legal definition of disabled and is entitled to SSD benefits.

ALJ Tennenbaum's testimony is not relevant because it has no bearing on the reasonableness of the arrest of Plaintiff nor on the reasonableness of the force used by defendant Jay. ALJ Tennenbaum's only knowledge of what occurred at the incident comes from the Plaintiff himself. Accordingly, the ALJ can add noting to the facts of the case that will help the jury determine if Officer Jay's actions were reasonable. Nor is ALJ Tennenbaum's testimony relevant to damages, because if the jury reaches that question they will need to come to their own conclusion as to the extent of Plaintiff's injuries and his ability to work in the future. The fact that under the statutory definitions of the Social Security Act, ALJ Tennenbaum found that

Plaintiff meets the definitions of being disabled and is entitled to benefits is not relevant to the question of what damages, if any, should be awarded in this case.  C.f. Wright v. Kelly, 95-CV-0688 (CEH), 1998 U.S. Dist. LEXIS 20424, at *15 (W.D.N.Y. Oct. 16, 1998) (precluding evidence that plaintiff was acquitted of underlying criminal charges).   Nor could ALJ Tennenbaum testify as to his assessment of the evidence, nor to any legal conclusions, as that would usurp the role of the jury in assessing the credibility of witnesses and damages.  Cameron v. City of New York, 598 F.3d 50, 61 (2d Cir. 2010) ("[a]s a matter of law, the credibility of witnesses is exclusively for the determination by the jury, and witnesses may not opine as to the credibility of the testimony of other witnesses at the trial.") (citation omitted).  Accordingly, this witness should be precluded pursuant to Rule 402.

Allowing ALJ Tennenbaum to testify would also lead to jury confusion, prejudice to defendant, and cumulative testimony.  The jury may think that because an ALJ with SSD found that Plaintiff was disabled under the definitions from the Social Security Act, that this establishes that Plaintiff is actually disabled and unable to work.  However, that question is for the jury to decide and allowing this witness to testify as to his conclusions would lead to confusion.  The Fourth Amendment to the United States Constitution, not subsections of the Social Security Act, governs this case.  Allowing the Plaintiff to confuse the issue by calling ALJ Tennenbaum should not be allowed.   This would be akin to calling the judge who presided over a suppression hearing in criminal court to testify at a subsequent civil trial as to her findings during the suppression hearing.  Wright, 95-CV-0688 (CEH), 1998 U.S. Dist. LEXIS 20424, at *15; United States v. Irvin, 787 F.2d 1506, 1516-17 (11th Cir. 1986))(fact of acquittal precluded because any probative value was "outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.")(citation omitted)..  Moreover, defendant Jay was not given a

chance to testify at the SSD hearing, and thus the ALJ only had one side of the story when he reached his decision.  Thus it would be prejudicial to officer Jay to allow the ALJ to testify. Finally in regard to Rule 403, any testimony of ALJ Tennenbaum would be cumulative, as his knowledge of this incident and the Plaintiff's damages is based on information provided from Plaintiff and his doctors, almost all of whom will be called by Plaintiff to testify in this civil trial. Accordingly, ALJ Tennenbaum should be precluded pursuant to Rule 403.

Moreover, any testimony that ALJ Tennenbaum may be asked to give in regard to what Plaintiff or others testified too during the SSD proceedings would be inadmissible hearsay under Fed. R. Evid. 802.  Finally, ALJ Tennenbaum cannot testify as to medical conclusions as he is not a medical doctor.  Accordingly, his testimony as to damages should be precluded under Rule 701 and 702 of the Federal Rules of Evidence.

For all the same reasons as the ALJ himself should not be permitted to testify, his written decision granting the Plaintiff SSD benefits should also be precluded from this case. Plaintiff has listed the decision as exhibit 13 on the Joint Pretrial Order.  Defendant objects to admission of this report as it is irrelevant to the claims or to damages, is prejudicial to defendants, is based solely on hearsay, amounts to non-admissible expert evidence, and will confuse the jury.

<u>**POINT VII**</u>

**PLAINTIFF    SHOULD    BE    PRECLUDED FROM  CALLING  DR. DASSA,  DR. ZHOU, <u>AND DR. TORO</u>**

On the JPTO, Plaintiff lists Dr. Dassa, Dr. Zhou, and Dr. Toro as medical witnesses whom he intends to call in this case.  Given that Plaintiff did not list these witnesses in his section on fact witnesses, it appears that Plaintiff intends to call them as medical experts only. (JPTO, Docket Entry No. 44).   These witnesses should be precluded from offering expert

testimony because Plaintiff has not provided the required disclosures under Fed. R. of Civ. P. 26(a)(2)(C) and because the parties stipulated that witnesses who were not deposed would not be called to testify at the trial.

Federal Rule of Civil Procedure 26(a)(2)(C) requires that a party seeking to call a non-retained expert, such as these medical doctors, to provide a disclosure which states:

> (i)   the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
> (ii)  a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2)(C).  In this case, Plaintiff has not produced the required disclosures.  For one of the doctors, Dr. Zhou, Plaintiff stated in a letter that: "It is anticipated that Dr. Zhou will testify regarding the results of the NCV/EMG test performed on plaintiff, Bates Stamped No. D633-D635, relating to the existence of right peroneal neuropathy."  This is insufficient under the rule since it does not summarize the facts and opinions to which the witness is expected to testify.  Puglisi v. Town of Hempstead Sanitary District No. 2, No. 11-CV-0445 (PKC), 2013 U.S. Dist. LEXIS 111972, *11, *13-16 (E.D.N.Y. Aug. 8, 2013) (precluding a doctor who was identified only by a general statement that the doctor will provide expert testimony in line with his reports, but for whom no Rule 26(a)(2)(C) disclosure was submitted).

In addition, these doctors should be precluded because the parties stipulated that any witnesses, including medical witnesses, whom were identified but not deposed, would not be called at the trial in this matter.  Indeed, Plaintiff's attorney put this stipulation on the record on September 11, 2012, when he wrote to the Court that:

> Further, the parties have conferred and agree to stipulate that, with the exception of Dr. Carbajal, any other individual who has not already been deposed but has previously been identified by the parties, including medical witnesses and other non-party witnesses, will not be called by either party to testify at trial.

(Plaintiff's Endorsed Letter, Exhibit B)   Defendant indicated this on the JPTO, stating an objection to these witnesses because of the prior stipulation.

Accordingly, Plaintiff should be precluded from calling Dr. Dassa, Dr. Zhou, and Dr. Toro at trial.

**POINT VIII**

**WITNESS ALBERTO MOLINA SHOULD BE PERMITTED TO TESTIFY BY DEPOSITION DESIGNATION SINCE HE IS UNAVAILABLE FOR TRIAL DUE TO INFIRMITY**

Alberto Molina was deposed in this matter on April 24, 2012.  Defendant now seeks to use the deposition testimony at the upcoming trial because the witness is unavailable.

Federal Rule of Evidence 804, allows for the use of deposition testimony at a trial if the witness is unavailable.  Rule 804(b) states that "former testimony" should not be "excluded by the rule against hearsay if the declarant is unavailable as a witness."  Fed. R. Evid. 804(b). Former testimony, such as a deposition, qualifies under this rule if it:

> (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and
>
> (B) is now offered against a party who had — or, in a civil case, whose predecessor in interest had — an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Fed. R. Evid. 804(b)(1).  All of these criteria are met in this case.  The testimony was given at a lawful deposition, arranged by subpoena served on the witness in this case.  (Molina Deposition Excerpts, Exhibit C).  In addition, the party against whom the testimony is offered – the Plaintiff – had an opportunity and similar motive to develop the testimony during the deposition.  Indeed, one of Plaintiff's attorneys was present during the deposition and asked questions of the witness. (Molina Deposition Excerpts, Exhibit C).   Thus, Plaintiff had an opportunity to develop testimony at the deposition and a similar motive in the deposition as he will have in the trial of

this case – namely to elicit all relevant testimony concerning the incident and the witnesses credibility.  Accordingly, the deposition testimony of witness Alberto Molina qualifies as former testimony under Rule 804(b).

In addition, the witness must be unavailable.  Rule 804(a) defines the criteria of unavailability: "A declarant is considered to be unavailable as a witness if the declarant: … (4) cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness."  In this case, the witness was struck by a vehicle in May 2013 and was just released from the hospital on October 24, 2013.  As is explained in the affidavit of his brother, the witness was in a coma for several weeks following the May 2013 accident and to this day is unable to make decisions for himself.  (Robely Molina Affidavit, Ex. D).  Thus, the witness is unavailable under the rule.

Accordingly, as the witness is unavailable and as the deposition testimony qualifies as "former testimony" under the rule, Defendant should be permitted to offer the deposition testimony of witness Alberto Molina in the upcoming trial.

## POINT IX

### PLAINTIFF SHOULD BE PRECLUDED FROM SUGGESTING A SPECIFIC DOLLAR AMOUNT TO THE JURY

Plaintiff should be precluded from suggesting a specific dollar amount to the jury. While the Second Circuit has not adopted a flat prohibition of suggesting a specific dollar amount to the jury, it does disfavor specifying target amounts for the jury to award.  Consorti v. Armstrong World Industries, Inc., 72 F.3d 1003 (2d Cir. 1995).  Such suggestions unlawfully anchor the jurors' expectations of a fair award at a place set by counsel, rather than by the evidence.  Id.; See Mileski v. Long Island R.R. Co., 499 F.2d 1169, 1172 (2d Cir. 1974) ("A jury with little or no experience in such matters, rather than rely upon its own estimates and

reasoning, may give undue weight to the figures advanced by plaintiff's counsel . . .").  The

Court in Consorti went on to state:

> "A jury is likely to infer that counsel's choice of a particular
> number is backed by some authority or legal precedent. Specific
> proposals have a real potential to sway the jury unduly. . . . We
> encourage trial judges to bar such recommendations."

Consorti v. Armstrong World Industries, Inc., 72 F.3d 1003, 1016 (2d Cir. 1995).  As such,

plaintiff should be precluded from suggesting a specific dollar amount to the jury during his

opening statement, during the testimony of any witness, and/or during summation.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court grant his

motions *in limine* in their entirety, and such other and further relief as the Court deems just and

proper.

Dated: New York, New York
     October 28, 2013

                    MICHAEL A. CARDOZO
                    Corporation Counsel of the
                     City of New York
                    Attorney for Defendant Jay
                    100 Church Street
                    New York, New York 10007
                    (212) 356-2331 / 2357

                    By:      /s/
                         Matthew J. Modafferi & Morgan D. Kunz
                         Assistant Corporation Counsels
                         Special Federal Litigation Division

cc:     Jon Louis Norinsberg, Esq. (By E.C.F. and Hand)
           Law Offices of Jon L. Norinsberg
           225 Broadway, Suite 2700
           New York, New York  10007

Index No.  10-cv-06353 (ALC)(JCF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NOEL JACKSON GUZMAN,

Plaintiff,

-against-

POLICE OFFICER BRIAN JAY,

Defendant.

**DEFENDANT'S MOTION *IN LIMINE***

***MICHAEL A. CARDOZO***
*Corporation Counsel of the City of New York*
*Attorney for Defendant Jay*
*100 Church Street*
*New York, New York  10007*

*Of Counsel:  Morgan D. Kunz & Matthew J. Modafferi*
*Tel:  (212) 356-2357 / 2331*

*Due and timely service is hereby admitted.*

*New York, N.Y.............................................................. , 2013*

*......................................................................... Esq.*

*Attorney for...............................................................*