Index No.  10-cv-06353 (ALC)(JCF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NOEL JACKSON GUZMAN,

                                              Plaintiff,

-against-

POLICE OFFICER BRIAN JAY,

                                              Defendants.

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION *IN LIMINE***

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Morgan D. Kunz*
*Tel:  (212) 356-2357*

*Of Counsel:  Matthew Modafferi*
*Tel:  (212) 356-2331*

## TABLE OF CONTENTS

Page

POINT I ........................................................................................................................ 2

    DEFENDANT SHOULD BE PERMITTED TO EXAMINE PLAINTIFF ON HIS
    ARREST AND INCARCERATION HISTORY FOR DAMAGES PURPOSES .................. 2

POINT II ....................................................................................................................... 3

    DEFENDANT SHOULD BE PERMITTED TO QUESTION PLAINTIFF ON HIS
    SOCIAL SECURITY DISAIBILITY AND UNEMPLOYMENT INSURANCE BENEFITS
    AS IT IS RELEVENT TO HIS CREDIBILITY ................................................................. 3

POINT III...................................................................................................................... 5

    DEFENDANT SHOULD BE PERMITTED TO EXAMINE PLAINTIFF ON HIS
    EMPLOYMENT HISTORY BECAUSE IT IS RELEVANT FOR CREDIBILITY
    PURPOSES................................................................................................................... 5

POINT IV...................................................................................................................... 6

    DR. GIDUMAL SHOULD BE PERMITTED TO EXPLAIN THE FOOT DROP AND
    EVIDENCE OF A PRE-EXISTING KNEE INJURY.............................................................. 6

POINT V ...................................................................................................................... 12

    ALBERTO MOLINA SHOULD BE PERMITTED TO TESTIFY AS HE HAS FIRST
    HAND, NON-HEARSAY, TESTIMONY TO OFFER ...................................................... 12

POINT VI..................................................................................................................... 13

    EVIDENCE OF THE RED LOUNGE AND THE LOCATION OF THE INCIDENT IS
    RELEVANT TO THE OFFICERS' STATE OF MIND ..................................................... 13

POINT VII ................................................................................................................... 14

    TO THE EXTENT MICHELLE HERNANDEZ TESTIFIES IN THIS TRIAL,
    DEFENDANT SHOULD BE PERMITTED TO IMPEACH HER WITH HER AND HER
    MOTHER'S BIAS AGAINST POLICE OFFICERS............................................................ 14

CONCLUSION............................................................................................................. 16

## TABLE OF AUTHORITIES

**Cited Cases**                                                                                                        **Page**

Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 123 (2d Cir. 2004) (citing
    Graham v. Connor, 490 U.S. 386, 397 (1989)) ................................................................. 13

Cedar Petrochems., Inc. v. Dongbu Hannong Chem. Co., 769 F. Supp. 2d 269, 279
    (S.D.N.Y. 2011) ................................................................................................................... 8

Commercial Data Servers, Inc. v. IBM, 262 F. Supp. 2d 50, at 62 (S.D.N.Y. 2003) ..................... 9

Hynes v. Coughlin, 79 F.3d 285, 293-94 (2d Cir. 1996) ................................................................ 4

In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 643 F. Supp. 2d 471,
    482 (S.D.N.Y. 2009) ............................................................................................................ 8

Jenkins v. City of New York, 478 F.3d 76, 90 (2d Cir. 2007) ..................................................... 13

Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp., 77 F. Supp. 2d 446, 458
    (S.D.N.Y. 1999) ................................................................................................................... 9

Morritt v. Stryker Corp., 07-CV-2319 (RRM)(RER), 2011 U.S. Dist. LEXIS 98218
    (E.D.N.Y. Sept. 1, 2011) ................................................................................................. 9, 10

Picciano v. McLoughlin, 07-CV-0781 (GTS/GJD), 2010 U.S. Dist. LEXIS 114704, at
    *21 (N.D.N.Y. Oct. 28, 2010) ........................................................................................... 14

Point Prods. A.G. v. Sony Music Entm't. Inc., No. 93 Civ. 4001 (NRB), 2004 U.S. Dist.
    LEXIS 2676, 2004 WL 345551, at *9 (S.D.N.Y. Feb. 23, 2004) ........................................ 8

Siracuse v. Program for the Dev. of Human Potential, 07 CV 2205 (CLP), 2012 U.S.
    Dist. LEXIS 73456, *37-48 (E.D.N.Y. Apr. 30, 2012) ....................................................... 5

Thomas v. City of New York, 09 Civ. 3162 (ALC), Motion *In Limine* Rulings, Final
    Pre-Trial Conf., pgs. 50-51 (S.D.N.Y. June 21, 2012) (Carter, J.) ..................................... 2

United States v. Abel, 469 U.S. 45, 51 (1984) ............................................................................. 15

United States v. Jones, 900 F.2d 512, 520-21 (2d Cir. 1990) ....................................................... 4

United States v. Kozlovski, No. 10 Cr. 458 (RRM), 2011 U.S. Dist. LEXIS 119142,
    2011 WL 4916915, at *2 (E.D.N.Y. Oct. 14, 2011) ........................................................... 4

United States v. Sperling, 726 F.2d 69, 74-75 (2d Cir. 1984) ...................................................... 4

Walsh v. Chez, 583 F.3d 990, 994 (7th Cir. 2009) ........................................................................ 8

Wechsler v. Hunt Health Sys. Ltd., 381 F. Supp. 2d 135, 155 (S.D.N.Y. 2003) ........................... 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

NOEL JACKSON GUZMAN,

                         Plaintiff,

             -against-

POLICE OFFICER BRIAN JAY,

                         Defendants.

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE***

10-cv-06353 (ALC)(JCF)

------------------------------------------------------------------------ x

**PRELIMINARY STATEMENT**

Defendant Police Officer Jay respectfully submits this memorandum of law in opposition to Plaintiff's motions *in limine*. Defendant does not oppose Plaintiff's motions *in limine* IV, V, or VI, concerning Plaintiff having punched a wall in 2003, any gang affiliation, or Plaintiff's immigration status, however Defendant does reserve a right to revisit this issue if Plaintiff opens the door through his own testimony or the testimony of others.[1]

Defendant does, however, specifically raise the following arguments in opposition to Plaintiff's other motions *in limine*: (1) Defendant should be permitted to examine Plaintiff on his arrest and incarceration history for damages (Plaintiff's Point I); (2) Defendant should be permitted to question Plaintiff on his Social Security Disability and Unemployment Insurance benefits as it is relevant to his credibility (Plaintiff's Point II); and (3) Defendant should be permitted to examine Plaintiff on his employment history because it is relevant for credibility purposes (Plaintiff's Point III); (4) Dr. Gidumal should be permitted to explain evidence of a pre-

---

[1] Plaintiff's Motions *in Limine* does not have a Point VII.

existing injury (Plaintiff's Point VII); (5) Alberto Molina should be permitted to testify as he has first hand, non-hearsay, testimony to offer (Plaintiff's Point IX); (6) Evidence of the red lounge and the location of the incident is relevant to the officers' state of mind (Plaintiff's Point X and XI) and (7) to the extent Michelle Hernandez testifies in this trial, Defendant should be permitted to impeach her with her and her mother's bias against police officers (Plaintiff's Point XII and XIII).

## ARGUMENT

### POINT I

**DEFENDANT SHOULD BE PERMITTED TO EXAMINE PLAINTIFF ON HIS ARREST AND INCARCERATION HISTORY FOR DAMAGES PURPOSES**

Plaintiff argues that his prior arrest has *in no way* been placed at issue in this case, and therefore, the arrest should be precluded. Plaintiff is incredibly mistaken. Plaintiff *has* put his prior arrest and prior detention at issue. He brought a false *arrest* claim and his prior arrest and detention bear directly on damages. See Defendant's Motion *in Limine*, at Point V. As mentioned in Point V of Defendant's motion, Your Honor has recently ruled that a plaintiff's prior arrest and incarceration history is relevant to a jury's determination of emotional damages for a false arrest claim under Rule 402. Thomas v. City of New York, 09 Civ. 3162 (ALC), Motion *In Limine* Rulings, Final Pre-Trial Conf., pgs. 50-51 (S.D.N.Y. June 21, 2012) (Carter, J.). Accordingly, Defendant should be permitted to examine Plaintiff on his prior arrest and incarceration.

## POINT II

### DEFENDANT SHOULD BE PERMITTED TO QUESTION PLAINTIFF ON HIS SOCIAL SECURITY DISAIBILITY AND UNEMPLOYMENT INSURANCE BENEFITS AS IT IS RELEVENT TO HIS CREDIBILITY

Plaintiff argues that Defendant should be precluded from offering evidence of his unemployment benefits, social security disability benefits, and other social services. While Defendant does not intend to question Plaintiff on other social services, Defendant should be permitted to question Plaintiff on both unemployment benefits and social security disability benefits. Plaintiff made repeated false statements on his applications for these benefits, and therefore they are highly relevant to an assessment of his credibility

Plaintiff applied for social security disability benefits on May 19, 2009, claiming that he was disabled and unable to work due to that disability. (Disability Determination and Transmittal, Exhibit E, D613). In his application, Plaintiff claimed that his disability began on February 14, 2009 (the day of the incident at issue in this case), that he is unable to work, that he has no other source of income. (SSD Application Summary, Exhibit F, D638-D644). At the time of the incident in February 2009, and his application for SSD benefits in May 2009, Plaintiff was collecting unemployment benefits. (DOL payment history, Exhibit G, NYC516-NYC524). Indeed, throughout 2009 and 2010, until September 12, 2010, Plaintiff continued to collect unemployment benefits on a weekly basis. (DOL payment history, Exhibit G, NYC516-NYC524). To receive unemployment benefits, Plaintiff had to certify that he was available to start work immediately and that he was not disabled. If plaintiff was actually disabled and unable to work, as he swore to on his social security disability application, then he made false statements on a weekly basis to receive unemployment benefits. To compound matters, Plaintiff reapplied for unemployment benefits on October 7, 2009, November 17, 2009, February 23,

3

2010, April 6, 2010, July 6, 2010, and September 20, 2010. (Applications for UI Benefits, Exhibit H, D570–D590). On each of these applications, Plaintiff certified that he was not disabled and that he was available to start work immediately. (Applications for UI Benefits, Exhibit H, D570–D590). The point is that Plaintiff made false statements on official government applications for benefits, and that fact is directly relevant to his credibility and is admissible so the jury may asses his credibility.

Moreover, "false statements may be the basis for questioning under Rule 608," even where the statements occur outside of a formal court proceeding. United States v. Kozlovski, No. 10 Cr. 458 (RRM), 2011 U.S. Dist. LEXIS 119142, 2011 WL 4916915, at *2 (E.D.N.Y. Oct. 14, 2011)(permitting cross-examination regarding submission of false time sheets to employer) (citing Hynes v. Coughlin, 79 F.3d 285, 293-94 (2d Cir. 1996) (cross-examination regarding witness's filing of false claim for workmen's compensation); United States v. Jones, 900 F.2d 512, 520-21 (2d Cir. 1990) (upholding trial court's decision to allow cross-examination regarding false statements on applications for employment, apartment, driver's license, loan, and membership in an association); United States v. Sperling, 726 F.2d 69, 74-75 (2d Cir. 1984) (approving cross-examination regarding false credit card application)).

In addition, Plaintiff's argument that these facts should be excluded under Rule 403 is unavailing. The fact that Plaintiff made false statements on government applications is highly probative to his propensity for truthfulness, and it is not outweighed by a risk of undue prejudice.

4

# POINT III

## DEFENDANT SHOULD BE PERMITTED TO EXAMINE PLAINTIFF ON HIS EMPLOYMENT HISTORY BECAUSE IT IS RELEVANT FOR CREDIBILITY PURPOSES

Plaintiff argues that his employment history is irrelevant because he has no claim for lost wages. He further argues that his employment history should be excluded under Rule 404(a) as impermissible character evidence, and in the alternative, under Rule 403 because the prejudicial impact outweighs any probative value. As a preliminary matter, defendant requests that the jury charge include a sentence or two explaining that plaintiff is not seeking lost wages in this case and should not be compensated for lost wages in the event that defendant is liable to the plaintiff. The jury will be left to assume that they can compensate plaintiff for lost wages without a clear charge to the jury on this issue.[2]

Notwithstanding the absence of a lost wages claim, Plaintiff's employment history is relevant to the case because it bears on the Plaintiff's credibility. At his deposition, Plaintiff testified that he was never fired from any job. (Plaintiff's Deposition Excerpt, Exhibit I, pg. 43). However, Plaintiff reported to the New York State Department of Labor that he was fired from his job at Fairway because he refused to pick up dog feces when a supervisor instructed him to do so. (Department of Labor Summary of Statement, Exhibit J). In fact, on every application for unemployment benefits subsequent to his termination from Fairway,

---

[2] On a related issue, because Plaintiff's medical expenses are covered by his Social Security Disability benefits, for which he pays nothing, any award for future medical expenses should be totally off-set by this benefit. See, generally, N.Y.C.P.L.R. § 4545; Siracuse v. Program for the Dev. of Human Potential, 07 CV 2205 (CLP), 2012 U.S. Dist. LEXIS 73456, *37-48 (E.D.N.Y. Apr. 30, 2012). For this reason, Defendant asserts that Plaintiff's proposed verdict sheet, which includes a section for "future medical expenses" should not be used in this case. Indeed, the jury should be instructed not to consider any future medical expenses in the charge.

5

Plaintiff listed "discharged" or "fired" as the reason for his unemployment. (Department of Labor Document, Exhibit H, NYC572, 575, 578, 581, 584, 587, and 590). Defendant should be permitted to impeach plaintiff with his lies concerning his employment history, especially since credibility is at the heart of this case.[3]

**POINT IV**

**DR. GIDUMAL SHOULD BE PERMITTED TO
EXPLAIN THE FOOT DROP AND EVIDENCE
OF A PRE-EXISTING KNEE INJURY**

First, Defendant points out that the dispute over the extent of Dr. Gidumal's testimony is another reason why damages should be bifurcated. The issues presented by the experts, dealing with a long medical history, including nerve damage and reconstructive surgery, are not related to the question of whether excessive force was used – especially in this case where the main question is whether Officer Jay kicked Plaintiff. The complicated nature of the medical questions, the extent of Plaintiff's alleged damages, and disputes over the extent of expert testimony into these issues, strongly counsels toward bifurcation.

**A. Plaintiff's Motion To Preclude Dr. Gidumal From Testifying As To Causation Should be Denied.**

Plaintiff seeks to preclude Defendant's expert, Dr. Gidumal, from expressing an opinion as to causation. (Plaintiff's Motion In Limine, Point VII). Plaintiff's motion here is confusing and misplaced. Plaintiff never makes clear what precisely he is seeking to exclude. He argues in general terms that Dr. Gidumal cannot opine on causation, but based on the citations to the sections of Dr. Gidumal's deposition, it appears that Plaintiff is arguing that Dr.

---

[3] Plaintiff claims that he was just standing on a street corner when defendant Jay kicked, pepper-sprayed, slammed and arrested him for no reason. Defendant Jay, by contrast, denies ever kicking the plaintiff and only used force to place the plaintiff under arrest for obstructing government administration. Clearly, credibility is crucial to the jury's determination.

6

Gidumal cannot discuss what caused Plaintiff's injury of a "foot drop," otherwise known as a "peroneal nerve injury."[4] Dr. Gidumal, however, clearly expressed an opinion about the foot drop in his report – stating that Plaintiff does indeed have a foot drop, describing how the foot drop presents, and noting where in the medical records the foot drop was identified. (Gidumal Report, Exhibit K). Indeed, Dr. Gidumal noted in this report that when Plaintiff was seen at the emergency room on the night of the incident, there was "no foot drop noted." (Gidumal Report, Exhibit K, page 1). Also in Dr. Gidumal report is a notation that in May 2009, Dr. Dassa noted a "possible radiculopathy" and that the foot drop was also noted in a medical record from August 2009. (Gidumal Report, Exhibit K, page 1). During Dr. Gidumal's deposition, Plaintiff's attorney asked extensive questions about the foot drop and showed the doctor records that showed the a possible issue with his nerve was noted for the first time in March 2009. (Gidumal Deposition Excerpt, Exhibit L, 59:23 – 60:20). Accordingly, since at least September 2012, Plaintiff has not a detailed understanding of Dr. Gidumal's opinion and cannot now, over a year later, claim surprise at that opinion.

  Dr. Gidumal should be allowed to explain his opinion that Plaintiff has a foot drop including, what a foot drop is, how it will effect Mr. Guzman in the future, what the medical records reveal about the absence and/or presence of the foot drop in the weeks and months following the incident, and what those documents suggest about when the foot drop first presented itself. All of this information is within Dr. Gidumal's report. As to Plaintiff's argument that the doctor admitted during his deposition that there was no opinion as to causation in his report, this argument misses the point. Dr. Gidumal believes there is not enough

---

[4] Johns Hopkins Medicine, Neurology and Neurosurgery http://www.hopkinsmedicine.org/neurology_neurosurgery/specialty_areas/peripheral_nerve_surgery/conditions/foot_drop_injury.html, last visited November 4, 2013.

information to state what caused the foot drop, and indeed he observed in the report that the foot drop was not present when Plaintiff was first seen in the emergency room and that the first mention of the first drop was long after the incident.

It is well settled that an expert's trial testimony may be precluded based on nondisclosure only when it "'expound[s] a wholly new and complex approach designed to fill a significant and logical gap in the first [expert] report.'" Cedar Petrochems., Inc. v. Dongbu Hannong Chem. Co., 769 F. Supp. 2d 269, 279 (S.D.N.Y. 2011) (quoting Point Prods. A.G. v. Sony Music Entm't. Inc., No. 93 Civ. 4001 (NRB), 2004 U.S. Dist. LEXIS 2676, 2004 WL 345551, at *9 (S.D.N.Y. Feb. 23, 2004)).  This is not the case here.  Dr. Gidumal is not presenting on a wholly new and complex issue, he is simply explaining in greater detail under questioning issues that were covered in his report.  In the Federal Rules, "Section 26(a)(2)(B) does not limit an expert's testimony simply to reading his report … . The rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report." In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 643 F. Supp. 2d 471, 482 (S.D.N.Y. 2009)  (internal quotation marks and footnotes omitted).  That is exactly what the doctor did during his deposition when questioned by the Plaintiff, and that is exactly what he will be asked to do at trial.  The purpose of an expert's report "is not to replicate every word that the expert might say on the stand," but "to convey the substance of the expert's opinion ... so that the opponent will be ready to rebut, cross-examine, and to offer a competing expert[.]" Walsh v. Chez, 583 F.3d 990, 994 (7th Cir. 2009).  In this case, the report clearly conveyed the substance of Dr. Gidumal's opinion, and allowed the Plaintiff to conduct a thorough 180 page deposition – which interestingly is much longer than the deposition of any of

8

the police officers. As such, Dr. Gidumal's report covers in detail the question of the foot drop, when it first presented itself, the treatment thereof, and how it will effect Plaintiff in the future.

Additionally, even the Court were to conclude that Dr. Gidumal's report fails to adhere strictly to the disclosure requirements of Rule 26, imposing the sanction of precluding expert testimony is not required. See Commercial Data Servers, Inc. v. IBM, 262 F. Supp. 2d 50, at 62 (S.D.N.Y. 2003). Imposing a sanction under Rule 37(c)(1) is a matter committed to the district court's discretion, and the preclusion of evidence is a "drastic remedy." Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp., 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999) ("[R]efusing to admit evidence that was not disclosed in discovery is a drastic remedy and will apply only in situations where the failure to disclose represents a flagrant bad faith and callous disregard of the rules."). Indeed, "[p]recluding testimony of an expert, even when there has not been strict compliance with Rule 26, may at times tend to frustrate the Federal Rules' overarching objective of doing substantial justice to litigants." Wechsler v. Hunt Health Sys. Ltd., 381 F. Supp. 2d 135, 155 (S.D.N.Y. 2003) (internal quotation marks and citation omitted). In this case, the opinion of Dr. Gidumal should not be precluded because of the overarching goal of justice. Plaintiff faces no prejudice, since he has been on notice of Dr. Gidumal's opinion since September 2012. Moreover, Defendant faces a strong prejudice since allowing the testimony of Plaintiff's expert to go unrebutted would be highly prejudicial.

Finally, Defendant points out that the cases that Plaintiff cites do not support his assertion that Dr. Gidumal should be precluded from testifying as to the issue of causation. In the Moritt[5] case, for example, the Court excluded an affidavit from an expert submitted in

---

[5] Plaintiff provides the incorrect citation for this case. The correct citation is: Morritt v. Stryker Corp., 07-CV-2319 (RRM)(RER), 2011 U.S. Dist. LEXIS 98218 (E.D.N.Y. Sept. 1, 2011).

9

opposition to a summary judgment motion under Fed. R. Civ. P. 37(c)(1).  Morritt v. Stryker Corp., 07-CV-2319 (RRM)(RER), 2011 U.S. Dist. LEXIS 98218, *16-17 (E.D.N.Y. Sept. 1, 2011).  The Court noted that the reason expert reports are to be submitted in advance of trial is to allow the opposing party a reasonable opportunity to prepare an effective response to that testimony.  Id. at *17.  The Court then conducted a Fed. R. Civ. P. 37(c)(1) balancing, and concluded that because the new report was produced in opposition to a motion, that the prejudice to the non-disclosing party was high and the report should be excluded.  Id. at *19-27.  The facts of this case are very different, and here the Rule 37 factors weigh in favor of allowing the Dr. Gidumal to testify fully as to the foot drop.  Plaintiff knew about Dr. Gidumal's opinion on the foot drop for over a year and his attorney extensively questioned Dr. Gidumal on the issue at his deposition.  Thus, Plaintiff faces no prejudice as he has had plenty of time to craft a response.  In addition, since Plaintiff's expert opined on this issue, it would be unfair to prevent Dr. Gidumal from countering that testimony and explaining the basis of his opinion.

Accordingly, Dr. Gidumal should be permitted to testify about the foot drop and all related issues.

    **B.**    **Plaintiff's Motion To Preclude Dr. Gidumal From Testifying As To Evidence Of Prior Knee Injury Should Be Denied**

Plaintiff seeks to preclude Dr. Gidumal from explaining that there is evidence that Plaintiff had a knee injury prior to the incident.  (Plaintiff's Motion In Limine, Point VII).  Again in this point, Plaintiff does not clearly state what it is he seeks to preclude.  It appears that Plaintiff is attempt to preclude Dr. Gidumal from explaining the significance of a medical record from May 2009, just 3 months after the incident, in which an MRI notes that the knee ligament tear shown on the film is "chronic" and that chronic in this context means the injury is more than

6 months old. Thus, this medical record is evidence that there was ligament tear in Plaintiff's knee prior to the night of the incident. (Gidumal Deposition Excerpt, Exhibit L, 108:2-109:15).

First, it should be pointed out here that Dr. Gidumal is simply defining a medical term – chronic – a function clearly within the scope of expert testimony. The jury will need this information in order to assess the credibility of the Plaintiff when he claims he had no knee problems prior to the incident and to asses the opinion of Plaintiff's expert, who opines the knee problems began on the night of the incident. In addition, Plaintiff's arguments regarding preclusion fail for the same reasons as his efforts to preclude Dr. Gidumal from discussing causation fail. Namely, the issue is indeed covered in Dr. Gidumal expert's report, and even if it were not, his opinion is not "wholly new." Rather, in explaining the meaning of the term chronic Dr. Gidumal is explaining and elaborating on his opinions as to the knee. Indeed, Dr. Gisumal's report even notes that the tear was chronic. (Gidumal Report, Exhibit K, page 1). Moreover, in his report Dr. Dr. Gidumal discusses Plaintiff's knee injury, the course of treatment for that knee injury, the knee surgery, and his conclusions regarding the successfulness of the knee surgery in his report. (Gidumal Report, Exhibit K). Finally, even if the Court concludes this issue is not sufficiently detailed in the report, this is not the rare case where the extreme remedy of preclusion is warranted. Indeed, Plaintiff has known for over a year what Dr. Gidumal's opinion on the issue is, and he faces no prejudice in crafting a response to that opinion.

Accordingly, Dr. Gidumal should be permitted to testify about the meaning of the word chronic in the May 2009 MRI and all related issues.

**POINT V**

**ALBERTO MOLINA SHOULD BE PERMITTED TO TESTIFY AS HE HAS FIRST HAND, NON-HEARSAY, TESTIMONY TO OFFER**

Plaintiff seeks to exclude the testimony of Alberto Molina, arguing that he does not have first hand knowledge of what occurred that night, and that he can only offer hearsay statements. (Plaintiff's Motions *in Limine*, Point VIII). Plaintiff is absolutely incorrect in arguing that Mr. Molina only has hearsay statements to offer. Plaintiff selectively cites to sections of Molina's testimony when he did speak about information that he learned from other parties, but purposefully ignored the vast bulk of Molina's testimony in which he offers first hand information about Plaintiff's actions that night.

For example, Mr. Molina explains that he was in the Red Lounge on the night of the incident. (Molina Deposition Excerpt, Exhibit M, 16:1-6). He explains that as he was leaving the club, two men started a fight with him and his friend. (Molina Deposition Excerpt, Exhibit M, 25:7 – 25:21). Mr. Molina was then shown a photograph of the Plaintiff, and asked "do you recognize the person shown there in the photograph?" And Mr. Molina responded, "Yeah, he was the light-skinned guy" who started the fight with Mr. Molina and who fought with Mr. Molina's friend. (Molina Deposition Excerpt, Exhibit M 28:20 – 29:20). This is not hearsay, this is first hand knowledge of what Plaintiff did that night. Moreover, the witness was in the holding cell with the Plaintiff and they spoke to each other, and can therefore provide testimony as to statements from Plaintiff. Fed. R. Evid. 801(d)(2).

Defendants acknowledge that some information that Mr. Molina provided during his deposition may be properly excluded as hearsay. Much of his testimony, however, is not hearsay. Thus, if Mr. Molina testifies in person, objections to hearsay should be handled on a

question by question basis. If Mr. Molina testifies by deposition designation, (Defendant's Motion in Limine, Point IIX), then the parties should designate and counter-designate portions of his deposition to be entered into evidence, and bring any dispute to the Court.

### POINT VI

### EVIDENCE OF THE RED LOUNGE AND THE LOCATION OF THE INCIDENT IS RELEVANT TO THE OFFICERS' STATE OF MIND

Plaintiff argues that evidence of the Red Lounge should be precluded because it is irrelevant and prejudicial. As evidenced by the lack of a legal citation in his motion point, plaintiff's attempt to keep out the events leading up to the incident is a futile effort, not supported by law, to eliminate all potentially harmful facts to his case. What plaintiff fails to realize is both of his claims, false arrest and excessive force, are analyzed using the "totality of the circumstances" known to the officers at the time of the arrest. See Jenkins v. City of New York, 478 F.3d 76, 90 (2d Cir. 2007) ('[p]robable cause is, of course, evaluated on the totality of the circumstances"); Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 123 (2d Cir. 2004) (citing Graham v. Connor, 490 U.S. 386, 397 (1989) (to establish excessive force, the plaintiff must demonstrate, "in light of the totality of the circumstances faced by the arresting officer, [that] the amount of force used was objectively [un]reasonable at the time.").

The facts known to the officers at the time of the incident were that all of the bars in the area close at 4 a.m. and intoxicated bar-goers fill the street where fights repeatedly occur. From their prior experience, the officers know that the area where the incident took place is hostile, crowded and often filled with intoxicated individuals. The facts known to the officers regarding the crowd outside the Red Lounge at 4 a.m. on a weekend morning are crucial to the totality of the circumstances faced by the officers. These facts are relevant to the reasonableness

13

of the force used. Accordingly, the facts known to the officers at the time of the incident regarding the Red Lounge is extremely relevant to the case and should be admissible.

Furthermore, the officers knowledge of the Red Lounge and the area outside of the bars in the vicinity of 207th Street and Sherman Avenue is relevant to rebut plaintiff's claim for punitive damages, specifically that defendant Jay acted maliciously or with evil intent. See Picciano v. McLoughlin, 07-CV-0781 (GTS/GJD), 2010 U.S. Dist. LEXIS 114704, at *21 (N.D.N.Y. Oct. 28, 2010) ("because the plaintiff [sought] punitive damages, evidence of defendant's state of mind is relevant to the issue of whether his use of force was based on an evil motive or intent."). Evidence of defendant Jay's state of mind before and during the incident is relevant to the plaintiff's claim for punitive damages. For this reason, as well as the totality of the circumstances, the officers knowledge of the Red Lounge and the location of where the incident took place are relevant and admissible.

### POINT VII

**TO THE EXTENT MICHELLE HERNANDEZ TESTIFIES IN THIS TRIAL, DEFENDANT SHOULD BE PERMITTED TO IMPEACH HER WITH HER AND HER MOTHER'S BIAS AGAINST POLICE OFFICERS**

Plaintiff argues that any mention of Michelle Hernandez's criminal history and her mother's criminal history is "totally irrelevant, will confuse the jury, is a waste of time and is unduly prejudicial."[6]  See Plaintiff's Motion *in Limine*, Points XI and XII. Michelle

---

[6] Plaintiff will not be prejudiced if the defendant is allowed to impeach Ms. Hernandez with her and her mother's experience with law enforcement and her bias against police officers. Ms. Hernandez is not even a witness to plaintiff's case. She and the plaintiff have nothing to do with one another and it is puzzling to think how Ms. Hernandez's bias could possibly prejudice whether plaintiff was falsely arrested or subjected to the use of excessive force on February 14, 2009.

Hernandez's *entire* testimony is totally irrelevant, will confuse the jury, is a waste of time and is unduly prejudicial.  See Defendant's Motion in Limine, Point IV A and B.  For this reason, plaintiff's motion to exclude Ms. Hernandez's criminal history and the criminal history of her mother should be denied as moot.

However, to the extent Michelle Hernandez is permitted to testify in this case, defendant should be permitted to cross-examine her by showing her bias against police officers, which stem from her and her mother's prior experiences with law enforcement.  See United States v. Abel, 469 U.S. 45, 51 (1984) ("it is permissible to impeach a witness by showing his bias under the Federal Rules of Evidence").  Plaintiff's motion to exclude her criminal history shows just how much of a distraction it would be to allow evidence of the Dominican Day incident and Ms. Hernandez to testify.  Her testimony will distract the jury from the issues in case, whether defendant Jay had probable cause to arrest the plaintiff and whether the force used was reasonable.  Her impeachment will be a distraction within a distraction.  For that reason, and the reasons set forth in defendant's original motion Point IV, Michelle Hernandez should not be permitted to testify.  To the extent she is permitted, defendant should be permitted to impeach her using her prior experience with law enforcement and her bias for police officers.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's motions *in limine* I, II, III, VII, IX, X, XI, XII, and XIII.  Defendant also asks that the Court grant their motions *in limine* in their entirety, and such other and further relief as the Court deems just and proper.


Dated: New York, New York
       November 4, 2013

                MICHAEL A. CARDOZO
                Corporation Counsel of the
                  City of New York
                Attorney for Defendant Jay
                100 Church Street
                New York, New York 10007
                (212) 356-2331 / 2357

By:   /s/
     Matthew J. Modafferi & Morgan D. Kunz
     Assistant Corporation Counsels
     Special Federal Litigation Division

cc:    Jon Louis Norinsberg, Esq. (By E.C.F. and Hand)
       Law Offices of Jon L. Norinsberg
       225 Broadway, Suite 2700
       New York, New York  10007

Index No.  10-cv-06353 (ALC)(JCF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NOEL JACKSON GUZMAN,

                                                                                    Plaintiff,

-against-

POLICE OFFICER BRIAN JAY,

                                                                                    Defendant.

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE***

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendant Jay*
*100 Church Street*
*New York, New York  10007*

*Of Counsel:  Morgan D. Kunz & Matthew J. Modafferi*
*Tel:  (212) 356-2357 / 2331*

*Due and timely service is hereby admitted.*

*New York, N.Y............................................................... , 2013*

*........................................................................................ Esq.*

*Attorney for................................................................................*